## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 19-24349-Civ-WILLIAMS/TORRES

IRMA ERNESTA ANIDO,

        Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social
Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION ON THE PARTIES'
## CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment filed by Irma Ernesta Anido ("Plaintiff") [D.E. 11] and Andrew Saul, the Commissioner of the Social Security Administration ("Defendant" or the "Government") [D.E. 12] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching an unfavorable decision.[1] Under the limited standard of review that governs this case, the Court finds that substantial evidence supports the ALJ's decision. Therefore, Plaintiff's motion for summary judgment should be **DENIED**, Defendant's motion for summary judgment should be **GRANTED**, and the ALJ's decision should be **AFFIRMED**.

_____

[1]    On October 22, 2019 the Honorable Kathleen Williams referred the parties' cross-motions to the undersigned Magistrate Judge for disposition.   [D.E. 2].

## I.        FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 57 years old on the onset of her alleged disability.[2]   On September 23, 2016, she filed an application for Social Security benefits because she was unable to work due to depression, anxiety, high blood pressure, and shortness of breath.   The Social Security Agency denied Plaintiff's application at the initial and reconsideration levels.   Plaintiff then requested a hearing before an ALJ that took place on November 28, 2018.[3]   The ALJ issued an unfavorable decision on January 8, 2019, denying Plaintiff's application for benefits.

The ALJ found at step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.   At step two, the ALJ determined that Plaintiff suffered from several severe impairments including affective disorder, anxiety disorder, schizoaffective disorder, and left knee degenerative joint disease.   The ALJ found, however, at step three that Plaintiff did not have an impairment that met or medically equaled a listed impairment.   The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the following limitations:

> limited to simple, routine, repetitive tasks without strict production demands; inability to climb ladders, ropes or scaffolds; occasional use of foot controls with the right lower extremity; an ability to change from standing to seated or vice versa for up to two minutes every two hours without interference with work product; and frequent interaction with

---

[2]   There was an initial onset date of September 4, 2016 but that was later amended to April 1, 2017.

[3]   The ALJ in this case was Ena Weathers.

2

the general public.

[D.E. 6 at 30].

Proceeding to step four, the ALJ found that Plaintiff could perform her past relevant work as a housekeeper and that she was not disabled within the scope of the Social Security Act.   The ALJ did not make an alternative step five finding. Following the ALJ's unfavorable decision, Plaintiff requested further review, but the Appeals Council denied that request on September 4, 2019.   Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g).   Accordingly, this action is now ripe for disposition.

## II.        STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999).   "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, the court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case).   Instead, so long as the ALJ's findings are

supported by substantial evidence, they are conclusive, and we must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). In determining whether the Commissioner's decision is supported by substantial evidence, a court is not to re-weigh the evidence anew. Rather, a court is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. If a decision is supported by substantial evidence, we must affirm even if the proof

4

preponderates against it.   Therefore, a court's responsibility is to ensure that the proper legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## III.      ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant bears the burden of producing evidence that proves he or she meets this statutory definition.  "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)).   The steps are followed in order to determine if the claimant is disabled.   "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal quotation and citation omitted).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made and the inquiry ends.  *See* 20 C.F.R. § 404.1520(b).  In the second step, the ALJ must determine whether the claimant

suffers from a severe impairment or combination of impairments.   If the ALJ does not make such a finding, then the inquiry ends.   *See* 20 C.F.R. § 404.1520(c).   At step three, the ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work.   *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work.").   If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work.   If the claimant cannot perform past relevant work, then a prima facie case of disability is established.   The ALJ assesses a claimant's RFC at this stage, based on all of the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments.   *See* 20 C.F.R. § 416.945(a)(1).   A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).   *See* 20 C.F.R. § 404.1545 ("Residual functional capacity assessment.   Your impairment(s), and any

6

related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.   Your residual functional capacity is the most you can still do despite your limitations.").

When making this finding, the ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis.   Only upon the conclusion of this function-by-function analysis may an ALJ express a claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy. This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform.   *See* 20 C.F.R. § 404.1520(e)-(f).

On appeal, Plaintiff challenges the ALJ's decision in three respects: (1) that the ALJ's RFC assessment is both unclear and unsupported, (2) that the ALJ's evaluation of the medical evidence is erroneous, (3) and that the ALJ's step four finding lacks substantial evidence.   We will consider each argument in turn.

### A.   *Whether Substantial Evidence Supports the RFC Assessment*

Plaintiff's leading argument is that the ALJ erred in her RFC evaluation.   An RFC is an assessment of a claimant's ability to do work despite his impairments. *See Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).   An ALJ makes an RFC finding based on all the "relevant medical and other evidence."   20 C.F.R. § 404.1545(a)(3).   The ALJ must consider any statements by medical sources about what the claimant can still do and whether those statements are based on formal

7

medical examinations.  The ALJ must also consider descriptions and observations of the limitations resulting from a claimant's impairments, including limitations that result from symptoms, such as pain.  *Id.*  Only "acceptable medical sources" can provide medical opinions, which are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of" a claimant's impairment, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment, and the claimant's physical or mental restrictions.  *Id.* § 404.1527(a)(2).   Ultimately, an ALJ may not make medical findings herself, *see Marbury v. Sullivan,* 957 F.2d 837, 840 (11th Cir. 1992), but it is her responsibility to resolve conflicting medical opinions.  *See Watson v. Heckler*, 738 F. 2d 1169, 1172 (11th Cir. 1984).

Plaintiff argues that the ALJ erred in her RFC assessment because she determined that Plaintiff could perform medium[4] levels of work without any medical source to support that finding.   Plaintiff reasons that the ALJ must have "played doctor" in her evaluation of the underlying record and interpreted raw medical data on her own while serving as both a judicial officer and a physician. Plaintiff further contends that the medical evidence was "quite complex" and that it required an assessment well beyond that of a layperson.   Some of the items included, for example, the evaluation of MRIs for Plaintiff's brain and knee.

---

[4]     Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c); *see also Freeman v. Barnhart*, 220 F. App'x 957, 959–60 (11th Cir. 2007) (per curiam).

Without referencing a single medical expert, Plaintiff questions how the ALJ made her assessment.

Plaintiff also takes issue with how the ALJ attempted to rely on the "overall record" as a way to explain how Plaintiff could perform medium levels of work. Plaintiff claims that this was insufficient because every explanation that the ALJ provided was conclusory and never gave any clarity as to how she reached her decision. [D.E. 6 at 35 ("[T]he above residential functional capacity assessment is supported by the overall evidence of record."); *id*. ("The record lacks corroborative clinical objective evidence consistent with the degree of limitation alleged by the claimant."); *id*. ("[W]hile the claimant is certainly limited in functioning to some degree, it is not to the degree alleged."); *id*. ("No further restrictions are warranted by the evidence than those set forth above in the claimant's residential functional capacity finding.")]. Thus, Plaintiff concludes that the ALJ's decision cannot stand.

Plaintiff's argument is unpersuasive because the RFC is not a medical assessment. *See Langley v. Astrue*, 777 F. Supp. 2d 1250, 1252 (N.D. Ala. 2011) ("Nowhere in the current regulations is RFC referred to as a medical assessment."). Instead, the ALJ is responsible for assessing the claimant's RFC, 20 C.F.R. § 404.1546(c), and then she must make an assessment based on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). During his fact-finding process, the ALJ considers the findings of physicians as well as state agency medical consultants as opinion evidence. 20 C.F.R. § 404.1527(e)(2)(i). However, nothing in the Social Security regulations require an ALJ to rely upon a medical source

opinion in reaching an ultimate determination about whether a claimant is disabled. *See Pratt v. Astrue*, 2013 WL 4056220, at *8 (N.D. Ala. Aug. 12, 2013) ("[T]he regulations do not require the ALJ to use a medical source opinion in his RFC determination.") (citing *Langley v. Astrue,* 777 F.Supp.2d 1250, 1261 (N.D. Ala. 2011)).

Social Security Ruling 96–5p confirms this interpretation of the Commissioner's regulations. The RFC refers to the ALJ's administrative determination of what work a claimant can do despite her limitations. Social Security Ruling 96–5p, 61 Fed. Reg. 34471, 34473 (July 2, 1996). And while these regulations state that the ALJ is free to adopt the medical source opinion in the RFC determination, they also make clear that there is no requirement to do so. *Id.*

As one might expect, this is not the first time this argument has been presented. In *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 921 (11th Cir. 2007), the ALJ discredited the physical capacities evaluation ("PCE") of a claimant's treating physician, and this was the only medical source opinion in the record. *Id.* The claimant argued that the ALJ's decision lacked substantial evidence because, without the PCE, it did not employ a medical source opinion. *Id.* Yet, the Eleventh Circuit concluded that substantial evidence supported the ALJ's decision, because other doctors indicated that the claimant's symptoms were not severe. *Id.* And since *Green*, we have not found a single decision in this circuit that requires an ALJ, in reaching a RFC assessment, to rely on a medical source opinion. *See, e.g.*, *Pratt*, 2013 WL 4056220, at *8 ("[T]he court rejects Plaintiff's

10

argument that the ALJ's RFC findings should have relied on a medical source opinion."); *see also Hart v. Colvin*, 2013 WL 4736841, at \*14 (N.D. Fla. Aug. 30, 2013) ("[A]n ALJ's RFC determination may be upheld even when there is no RFC assessment by a treating or examining physician."). Therefore, consistent with these decisions, we reject Plaintiff's argument that the ALJ erred in failing to rely on a medical source opinion.

Turning to Plaintiff's secondary argument, this too is unavailing because the record shows that the ALJ considered the entire record before making her RFC assessment. The ALJ took into consideration Plaintiff's daily activities, symptoms, medication, precipitating and aggravating factors, treatments, the objective medical findings, the consultative examination reports, and the functional limitations. Nothing more was required for the RFC assessment to be supported with substantial evidence because "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

### B.   <u>*Whether Substantial Evidence Supports the Weight Assigned to the State Agency Psychological Consultants*</u>

Next, Plaintiff argues that the ALJ erred in her evaluation of two state agency psychological consultants. An ALJ evaluates several factors when determining how much weight to assign a medical opinion, including: (1) whether the physician has examined the claimant, (2) the length, nature, and extent of a treating physician's relationship with the claimant, (3) the medical evidence and explanation supporting

11

the physician's opinion, (4) how consistent the physician's "opinion is with the record as a whole," and (5) the physician's specialization.   20 C.F.R. §§ 404.1527(c), 416.927(c).   These factors apply to both examining and non-examining doctors. *See id.*   Absent good cause, the ALJ must give a treating physician's[5] opinion substantial or considerable weight.   *See id.* (noting that more weight is generally given to opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.   "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons."   *Id.*   Furthermore, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore.   *See Winschel*, 631 F.3d at 1179 (reiterating that without a statement from the ALJ, a reviewing court would be unable to determine whether the disability decision was rational and supported by substantial evidence).   The opinion of a one-time examiner is not entitled to deference or special consideration. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("[T]he ALJ was not required to defer to Dr. Vrochopoulos's opinion since he was a psychologist who only examined Denomme on a single occasion and did not treat her.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

---

[5]   A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."   20 C.F.R. § 404.1502.

The opinion of a non-examining physician is entitled to little weight when it contradicts the opinion of an examining physician. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988). However, "[w]here a non-examining physician's report includes information that is not contained in the examining physicians' reports, but does not contradict the examining physicians' reports, the ALJ does not err in relying on the non-examining physician's report to the extent it contains non-contradictory information." *Kemp v. Astrue*, 308 F. App'x 423, 427 (11th Cir. 2009) (citing *Edwards v. Sullivan,* 937 F.2d 580, 584–85 (11th Cir. 1991)). The weight to be given a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *See* 20 C.F.R. § 404.1527(d)(3)–(4); *see also Crawford,* 363 F.3d at 1160 (holding that the ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence and findings of the examining physician). The more consistent a physician's opinion is with the record as a whole, the more weight an ALJ will place on that opinion. *See* 20 C.F.R. § 404.1527(d)(4).

Procedurally, an ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987). Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence. *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the

13

court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer v. Barnhard,* 395 F.3d 1206, 1211 (11th Cir. 2005).   If an ALJ makes clear that he or she considered a physician's opinion, and that the findings were consistent with the opinion, then there is no harmful error.   *Colon v. Colvin*, 600 F. App'x 867, 870 (11th Cir. 2016).   In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantive evidence." *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014).

Plaintiff complains that the ALJ erred in two respects.   First, Plaintiff claims that the ALJ's decision is inconsistent because, as part of the RFC assessment, it asserts that Plaintiff can frequently interact with the general public but earlier states that Plaintiff has moderate limitations in this domain.   [*Compare* D.E. 6 at 29 ("In interacting with others, the claimant has a moderate limitation.") *with id*. at 30 ("[T]he claimant has the residual functional capacity to perform . . . frequent interaction with the general public.")].   Plaintiff reasons that this case must be remanded so that the ALJ can untie this knot and make clear what Plaintiff can do despite her limitations.

Plaintiff's argument, at first glance, looks to be persuasive.   But, the argument falls short when the ALJ's decision is closely examined.   While the ALJ determined that Plaintiff had "no more than moderate limitations" in this area, she

14

also found that Plaintiff was able to interact well with others.   *Id.* at 29.   And that is consistent with the ALJ's RFC assessment that Plaintiff can perform frequent interactions with the general public.   In fact, as part of the analysis in the domain of interacting with others, the ALJ stated that Plaintiff "spent time with others daily on the phone," "regularly went to church," "denied difficulty interacting with family or friends," "was never fired because of problems getting along with others," and that she was working as a companion for an elderly neighbor.   *Id.*   The ALJ also found that Plaintiff maintained good eye contact and that no provider reported any difficulties in interacting with her.   The only reason the ALJ found Plaintiff to have a moderate limitation in this domain is because Plaintiff was regularly depressed and anxious on her exams with her mental healthcare providers.

Plaintiff's tactic is to use the label of a "moderate limitation" to create an inconsistency with her ability to interact with others.   Yet, that is not the limitation that the ALJ identified.   While Plaintiff stated that she was depressed and anxious, there were no reported difficulties in her interactions with others. And that is why, in the RFC assessment, the ALJ determined that Plaintiff could have frequent interactions with the general public.   Thus, Plaintiff's argument is unconvincing, in large part, because Plaintiff relies on a label of "moderate limitation" without exploring what that terms meant in the context of the ALJ decision and how it compares to the RFC that followed.

Second, Plaintiff argues that the ALJ erred because, when she determined that Plaintiff was able to have frequent interactions with the general public, this

contradicted the opinions of two state agency psychological consultants – both of whom the ALJ assigned significant weight.[6]   Both doctors opined, for example, that Plaintiff could only "function in work environments where employment-related social interactions [were] infrequent, brief, and largely task-specific (vs. collaborative")."   *Id*. at 77-79, 91-93, 105-107, 124-26, 137-39, 151-54.   Plaintiff claims that, despite crediting these opinions with significant weight, the ALJ failed to include their findings when determining whether Plaintiff could interact with others.   And because the ALJ omitted this critical portion of their opinions without any reason for doing so, Plaintiff concludes that the ALJ committed reversible error.

This argument falls short because Plaintiff's reliance on the two state agency psychological consultants is overstated.   Plaintiff complains that the ALJ did not adopt every finding in their opinions and that the failure to do so constitutes

---

[6]   The ALJ assigned these opinions significant weight for the following reasons:

> The undersigned gives significant weight to these opinions because they are based on a review of all of the claimant's medical records available at the time for a comprehensive opinion of functioning. Their opinion relates to their speciality in psychology and they have knowledge of our disability program's policies.   The doctors supported the opinion with references to the relevant objective medical evidence such as increased symptoms related to her husband's illness and death, and some deficits at some exams and the claimant's ability to engage in a range of daily activities.   Considering the overall record and the new evidence of work as a companion, the undersigned differs from the doctors and finds the claimant has no more than mild limitations in adapting and managing oneself.

[D.E. 6 at 34].

harmful error.[7]   But, the ALJ only assigned their opinions significant weight – not dispositive weight.   The ALJ even stated that the reason that these opinions could not be completely credited was because of other information in the record and the new evidence concerning Plaintiff's work as a companion:

> Considering the overall record and the new evidence of work as a companion, the undersigned differs from the doctors and finds the claimant has no more than mild limitations in adapting and managing oneself.

[D.E. 6 at 34].

Plaintiff nonetheless suggests that the ALJ should have given more details on each component of these opinions and stated which parts she found to be unpersuasive.   But, that level of detail is not required in an ALJ decision.   *See Dyer,* 395 F.3d at 1211 ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision").   And even if the ALJ erroneously failed to assign weight to and discuss every component of these opinions, that error would be harmless because the ALJ's limited rejection of these opinions is consistent with the ultimate conclusion that she reached.

Take, for instance, Plaintiff's normal level of daily activity, her interactions with her family, her appropriate interactions with medical providers, her ability to go to church, and her work as a companion.   All of this evidence undermines, in part, the opinions of the two state agency psychological consultants.   So, even

---

[7]   A consultative examiner's opinion is not entitled to the deference normally given to a treating source.   *See* 20 C.F.R. § 404.1527(c)(2); *Crawford v. Comm'r, Soc. Sec. Admin.,* 363 F.3d 1155, 1161 (11th Cir. 2004) (noting a one-time examiner's opinion is not entitled to great weight).

though the ALJ did not provide elaborate details on the portions of the opinions that she rejected, it is clear based on the overall record that Plaintiff's ability to interact with others supported a different conclusion based on the other evidence presented. Plaintiff invites the Court to second-guess the ALJ's determination and reach a different conclusion.   Yet, that is not for us to decide because "[i]f the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Phillips*, 357 F.3d at 1240 n.8 (internal quotation and citation omitted).   Plaintiff's complaints on how the ALJ weighed the medical evidence are therefore unpersuasive.

### C.   *Whether Substantial Evidence Supports the ALJ's Step Four Finding*

Plaintiff's final argument is that the ALJ failed to acknowledge a conflict in the record as to her past relevant work in a group home.   Plaintiff claims that, when the ALJ inquired about her prior work experience, Plaintiff explained that she cleaned, fixed beds, and washed clothes.   Plaintiff then contends that the ALJ failed to inquire any further into her prior work experience despite the record showing that she performed additional duties, including her responsibilities in administering medication.   If the ALJ had fully developed the record, Plaintiff states that the ALJ would have realized that her job description did not fit squarely with the role of housekeeper but instead reflected the responsibilities of a home healthcare aide.   Plaintiff further asserts that information on her prior work experience was available in the record when she submitted items in support of her

Social Security claim and in connection with her responses to an interview:

> she took classes, but not certified. (Psychiatric home), 7.26 hr., 7 hours
> per day, five days a week.   Began administering medications (only),
> wash clothes, make beds clean house, no cooking.   No bathing or
> dressing.   Move furniture to clean.   Walking 6 hours, Sitting 30
> minutes, Standing 1½ hour.   Heaviest weight up to 50 pounds,
> Frequent up to 25 pounds.   Climbing 40 minutes, stooping, kneeling,
> and crouching 30 minutes each.   No crawling.   Reaching 1 hour.
> Small objects 1-2 hours, Big objects 2-3 hours.

*Id*.   Plaintiff therefore concludes that the ALJ's step four finding must be set aside

because the record contains an unresolved conflict on a material issue concerning

her prior work experience and that she should have been categorized as a home

healthcare aide as opposed to a housekeeper.[8]

The most noticeable problem with Plaintiff's argument is that she never

objected to the testimony of the vocational expert (the "VE") when the ALJ asked

questions about her prior work experience.[9]   That is, when the time came for the

ALJ to ask questions about Plaintiff's past relevant work, the VE testified without

interruption that Plaintiff's prior position was that of a housekeeper.   And given

that Plaintiff failed to object, question, or even raise the possibility that an

inconsistency might exist, it is difficult to see how she can argue on appeal that the

ALJ erred when the errors identified point to her own failures, not the ALJ's.   *See*

---

[8]   This distinction is important because the job of a housekeeper is an unskilled light job with a reasoning level of one whereas the job of a home healthcare aide is a medium, semi-skilled job with a reasoning level of 3.

[9]   An ALJ may use the services of a vocational expert to make a determination as to whether a claimant can perform their past relevant work, given the claimant's residual functional capacity.   *See* 20 C.F.R. § 404.1560(b)(2).

*Street v. Barnhart*, 133 F. App'x 621, 627–28 (11th Cir. 2005) (stating that an "administrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'") (quoting *Pena v. Chater,* 76 F.3d 906, 909 (8th Cir. 1996)).

Putting that aside, Plaintiff has failed to meet her "burden of proving that [s]he cannot return to h[er] past relevant work." *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 831 (11th Cir. 2013) (citing *Lucas v. Sullivan,* 918 F.2d 1567, 1571 (11th Cir. 1990)). She complains that her duties went beyond the position of a housekeeper because she administered medication. But, she never points to any evidence that administering medication was a main part of her duties nor does she explain why she is unable to perform this *kind of work* based on the evidence in the record. *See id*. ("The claimant must demonstrate an inability to perform his "past *kind* of work, not that he merely be unable to perform a specific job he held in the past.") (citing *Jackson v. Bowen,* 801 F.2d 1291, 1293 (11th Cir. 1986) (holding that although claimant had demonstrated that he could not perform his past job as a link belt operator at the pipe manufacturing factory, he did not demonstrate that he could not perform such jobs in general because he did not show that climbing and descending stairs is generally a requisite of such jobs)).

Plaintiff's failures are then compounded because there is no evidence, nor any argument, that her prior work as a housekeeper was *not* past relevant work.[10] *See*

---

[10]   Past relevant work is defined as work that a claimant has done in the past 15 years and that was substantial gainful activity. *See* 20 C.F.R. § 416.960(b)(1).

*Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991) ("[A] claimant has the burden of showing that certain work experience is not past relevant work."). She makes the assertion in her opening brief, yet abandons it without any evidence. If anything, the record shows that housekeeping was her past relevant work because she testified that she cleaned, fixed beds, and washed clothes. She also reported in the job history section of her disability claim that she worked in housekeeping from October 2001 until November 2013. [D.E. 6 at 50, 395]. Thus, despite her assertions to the contrary, the evidence in the record shows that housekeeping was her position for many years and Plaintiff has otherwise failed to produce any evidence to undermine that finding. *See Levie*, 514 F. App'x at 830 ("The claimant bears the burden of proving that [s]he is disabled and, thus, is responsible for producing evidence to support his claim.") (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003)). For all of these reasons, Plaintiff's motion for summary judgment [D.E. 11] should be **DENIED**, Defendant's motion for summary judgment [D.E. 12] should be **GRANTED**, and the ALJ's decision should be **AFFIRMED**.

## *IV.   CONCLUSION*

Substantial evidence supports the ALJ's findings as noted in her unfavorable decision. The ALJ applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless. For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 11] be **DENIED**, that Defendant's motion for summary judgment [D.E. 12] be **GRANTED**,

and that the ALJ's decision be **AFFIRMED**.[11]

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 20th day of November, 2020.


/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge


---

[11]   One argument that we did not discuss above is Plaintiff's allegation that the ALJ failed to fully develop the record.   We do not give much attention to this argument because it is one of the weakest presented.   The VE testified on the demands of Plaintiff's past-relevant work.   The ALJ then questioned the VE and both referenced sections of the Dictionary Occupational Titles to describe Plaintiff's past relevant work.   The ALJ presented her findings in a detailed decision that incorporated the Plaintiff's RFC, and relied on the VE's testimony.   It is therefore unclear as to how the ALJ failed to develop the record when the findings she relied upon were supported by substantial evidence.   This argument therefore has no merit and we omit any further discussion of it.